## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE/OPELOUSAS DIVISION

**MOSES WAYNE MALBREW**        **CIVIL ACTION NO. 09-1588**

**VERSUS**        **JUDGE MELANÇON**

**MICHAEL ASTRUE,**        **MAGISTRATE JUDGE HANNA**
**COMMISSIONER OF SOCIAL**
**SECURITY**

### REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable law, it

is recommended that the Commissioner's decision be **REVERSED AND REMANDED**.

### Background and the Commissioner's Findings

Moses Wayne Malbrew filed applications for disability and supplemental security

insurance benefits on July 20  and July 23, 2007, alleging a disability onset date of

December 17, 2006, after he was hit by a car.  (R 10).  In his application, Malbrew

alleged he was unable to work because of a broken leg and "smashed arm."  (R 116).  He

stated "I can barely walk on my leg.  I can barely move my right arm and I am right

handed."  (R 116).

Malbrew was born on September 1, 1960, and was 48 years old on the date of the

hearing before the ALJ on September 9, 2008.  (R 31).  He had a GED.  (R 50).  The ALJ

found Malbrew had past relevant work as a laborer.  (R 25).  Malbrew testified at the

hearing, as did his father Moses Malbrew and Ms. Neilson, vocational expert.  (R 29).

In the Decision, the ALJ found Malbrew had not engaged in substantial gainful employment since the alleged onset date of December 17, 2006.  (R 15).  At the second step, he found Malbrew had the following severe impairments: status post limb fractures, schizophrenia, depression, anxiety, and alcohol abuse.  (R 15).  The ALJ found at the third step Malbrew did not have any impairment of combination of impairments that met or equaled in severity any listed impairment, particularly Listings 12.02 (chronic organic mental), 12.03 (schizophrenic) or 12.04 (affective disorders).  (R.15).  Specifically, the ALJ found as follows:

> Having carefully reviewed the evidence, the Administrative Law Judge finds that the claimant has only mild restrictions of activities of daily living and mild difficulties maintaining social functioning.  The claimant has moderate difficulties maintaining concentration, persistence, or pace.  There is no evidence of episodes of decompensation of extended duration.  (R 15).

> The ALJ found Malbrew had the following residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b).  The claimant is able to lift and carry 20 pounds occasionally and 10 pounds frequently, with an option of sitting or standing.  The claimant is able to walk 4 hours in an 8 hour workday.  The claimant has unlimited abilities of push and pull and unlimited gross and fine dexterity.  Although the claimant is able to occasionally climb stairs, he is unable to do any running or climbing of ladders, ropes, or scaffolds.  The claimant is able to bend, stoop, crouch, crawl, balance, twist, and squat.  The claimant is unable to do any overhead lifting with his right arm.  He is able to do only minimal pushing with his right lower extremity.  Mentally, the claimant is able to get along with others, understand simple instructions, concentrate on and perform simple tasks, and respond and adapt to changes in the workplace and supervision.

(R 16, 17).

Proceeding to the fourth step, the ALJ found Malbrew could not perform his past relevant work as a heavy laborer.  (R 24, 25).  After hearing testimony from the vocational expert, the ALJ found Malbrew could perform such representative jobs as small products assembler, production line worker, and assembly line operator.  (R 27). As a result, the ALJ determined Malbrew had not been under any disability, as defined in the Social Security Act, from December 17, 2006, through the date of the Decision on October 20, 2008.  (R 28).  This appeal followed.

### *Assignment of Errors*

As the undersigned reads claimant's brief, he asserts the following errors:

1) the ALJ erred in failing to give proper weight and consideration to the opinions of Dr. P. Keith Nabours, psychiatrist;

2) the ALJ's residual functional capacity is not supported by substantial evidence of record.

### *Standard of Review*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards.  Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994).  Substantial evidence is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991).  The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion.  Carey, 230 F.3d at 136; Johnson v. Bowen , 864 F.2d 340, 343 (5th Cir.1988).  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

Under the first four steps of the sequential analysis,[1] the burden lies with the claimant to prove disability. Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995). The inquiry terminates if the Commissioner determines at any point during the first four steps

---

[1]   In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992):

1.     If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

2.     A person who does not have a "severe impairment" will not be found to be disabled.

3.     A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4.     If a person can still perform his past work, he is not disabled.

5.     If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

that the claimant is disabled or is not disabled. Id. Once the claimant satisfies his or her

burden under the first four steps, the burden shifts to the Commissioner at step five to

show that there is other gainful employment available in the national economy that the

claimant is capable of performing. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir.

1994). This burden may be satisfied either by reference to the Medical-Vocational

Guidelines of the regulations or by expert vocational testimony or other similar evidence.

Fraga v. Bowen, 810 F.2d 1296, 1304 (5th Cir.1987). The burden of proof then returns to

the claimant to rebut the Commissioner's showing. Masterson v. Barnhart, 309 F.3d 267,

272 (5th Cir.2002). A finding that a claimant is not disabled at any point in the five-step

review is conclusive and terminates the analysis. Lovelace v. Bowen, 813 F.2d 55, 58 (5th

Cir.1987).

### Discussion

There was no allegation by claimant in the present applications that he suffered

from a mental impairment.[2] However, it appears that prior to the hearing counsel

submitted records of Dr. P. Keith Nabours, psychiatrist, for review by the ALJ. (R 263 -

270). Dr. Nabours' records consist of a narrative dated November 19, 2007 (R 268); a

chart note dated May 14, 2008 (R 263); and a Mental Functional Capacity Assessment

---

[2]The record shows the claimant filed multiple prior claims with alleged onset dates of
10/5/1984, 1/1/1995, and 3/31/2001 which were all denied (R 109). The bases for these claims
is not apparent in the record, but they were all filed prior to his being hit by a car in 2006, which
resulted in physical injuries which formed the primary basis for his disability claim in this
application. (R 112, 116).

dated May 27, 2008.  (R 265).

Dr. Nabours' narrative includes a present history, past history and a diagnosis of, *inter alia*, "295.30, schizophrenia, paranoid type." (R 270).   In the narrative, Dr. Nabours states that "he previously saw Wayne many years ago for treatment of a psychotic disorder."  (R 268).  Dr. Nabours reported that "[Malbrew] related that he has continued to have problems with auditory hallucinations on a daily basis." (R 268).  He also noted as follows:

> He is living with his father and is unemployed. Even before the accident, he only worked intermittently and then for short periods of time.  He has never been able to maintain himself in a working environment or see to his financial needs on any consistent basis.  He has no social outings.  He is not married nor has he ever been married.  He does not dating [sic].  He has no friends.  He spends his time at home watching television and sleeping.  In his late teens and early adulthood he did a lot of drinking.  Now he drinks a beer occasionally but no heavy drinking.
> Wayne's father reported essentially the same history that Wayne stays at home, he get into anger bouts for apparently no reason oftentimes, and has never been able to maintain any work situation.

(R268).

As past history, Dr. Nabours reported as follows:

> Wayne grew up here in Lake Charles.  He father worked at PPG; his mother managed a store.  He is the youngest of five children having four older sisters.  He attended school through high school, but the latter part of that education was done as home schooling.  He began dating some in his teens, but never dated very seriously and has never married.  He went into the Navy but did not make it through boot camp.  He has always been a very quiet person who stayed to himself.

(R 269).

Dr. Nabours did not conduct a mental status examination, and several portions of

the form are blank.[3]  Dr. Nabours issued a Diagnosis, as follows:

| Axis I | - | 295.30 Schizophrenia, paranoid type |
|---|---|---|
| Axis II | - | No diagnosis |
| Axis III | - | Post automobile accident in December 2006 which left him with some damage to his right arm and leg.  He walks with the aid of a cane. |
| Axis IV | - | Problems related to social environment, occupational problems, economic problems |
| Axis V | - | Current - 40 |
| | | Highest in the last year - 40. |

(R 270).

Under the Recommendations section, Dr. Nabours wrote "No treatment was

sought.  He simply wanted the form filled out which I will do."  (R 270).

A chart note by Dr. Nabours on May 14, 2008, while difficult to read, appears to

state as follows:

Returned at the request of his lawyer apparently to seek out treatment.

He is having daily auditory hallucinations and paranoid delusions.  Sleeps off and on day and night.  Mood described as "awkward" and "depressed." No active suicidal or homicidal ideation.  Very seldom drinks, no drugs.

Spends most of his time with parent [illegible].  Trying to get disability.

He and I discussed use of 2nd generation antipsychotics.  He would not agree to take them but did agree to consider it and call back if he decides to try.

(R 263).

---

[3]The portions of the form not filled out are nominated "Attitude," Appearance," "Use of Alcohol," "Use of Drugs," "Motor Behavior," "Facial Expression," "Mood," "Thought Processes," "Thought Content," "Affective State," "Disorders of Perception," "Conversion Symptoms," "Somatization," "Appetite & Weight," "Sleep," "Libido," "Intellectual Functioning," and "Medications."

Dr. Nabours also completed a Mental Functional Capacity Assessment dated May 27, 2008.  (R 265 - 266).  In that assessment, Dr. Nabours reported that Malbrew would have the following "limitations likely to occur more than 50% of the work week:"

1)   Perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;

2)   Work in coordination with or proximity to others without being distracted by them;

3)   Complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;

4)   Accept instructions and respond appropriately to criticism from supervisors;

5)   Get along with coworkers or peers without distracting them;

6)   Maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.

(R 265 - 266).

In addition, Dr. Nabours reported Malbrew would experience limitation "likely to occur from 25% to 50%" of the work week in the following areas:

1)   Maintain attention and concentration for 2 hours blocks of time;

2)   Sustain an ordinary routine without special supervision;

3)   Respond appropriately to changes in a work setting.

(R 265 - 266).

Dr. Nabours explained his assessment as follows:

Mr. Malbrew has a long history of paranoid psychosis which has been poorly responsive to treatment.  He also has a very poor history of compliance with treatment.  Work history is dismal.

(R 266).

8

During the hearing before the ALJ, Malbrew testified he lived with his father and had "for a long time," about 20 years, but that he stayed in a separate house right next to his father and owned by his father.  (R 34, 35).   He had never been married.  (R 48).

He testified that he had taken medication for a mental condition in the past, but "the medicine started giving me muscle spasms" and "ever since then I've been scared of medicine but I always knew if I have to take medicine, I take it."  (R 41).  He further testified "the medicine Dr. Neighbors [sic] give me it really make me catch some muscle spasms where your muscles all bent up and all that kind of stuff."  (R 54).  He testified he believed he quit taking the medication "way back in the 80's" and that he was not currently taking any medication because he "ain't got no money to buy all that."  (R 42).

He testified he got a GED, but had a tutor and didn't go to school because "that's when my mental problem starts flaring up."  (R 50).  He testified he was hospitalized at St. Patrick's and at Pineville during that time, but since then he has just seen a psychiatrist.  (R 51).

He testified that he would "go crazy in the house sometimes and my family would call the cops and stuff."  (R 53).  He explained as follows: "I just nut up."  (R 53).  "Yeah, I think I'm some supernatural person and I got - - I think I'm special supernatural and all kind of stuff like that.  And the voices would talk to me like I'm - - make me feel like I'm some big old hero."  (R 53).  He testified he was in jail or at the hospital "quite a few" times.  (R 53).  When asked why he did not work during long periods of time he stated:

9

"Well, I really don't know.  I just I spent all - - I was kind of all the time figuring out who I was talking to most of the time." (R 55).  Further inquiry by his attorney revealed the following dialogue:

> Q.   Did you talk to people - - I mean, when you - - okay - - with - - you said you hear people talking to you.  Is it men's voices or women's voices?
> A.   It's really like a big old crowd of people, you know.
> Q.   And - -
> A.   And, yeah, they're sitting around trying to figure out the world and what have you.
> Q.   Do they talk to you all at one time?
> A.   Yeah.
> Q.   When that happens, can you hear other things around you?
> A.   Yeah, it's like being in a big old crowded area somewhere.
> Q.   Okay.  Do you ever talk back with them?
> A.   Yeah.
> Q.   And has that been a problem also in your jobs?
> A.   Yeah.

(R 56).

Claimant's father also testified at the hearing.  He stated that Malbrew had always lived either with him in his house or "[i]n the little house right next to me" and that he looked after him all the time.  (R 60).

At the hearing before the ALJ, the ALJ recognized mental impairments and found Malbrew suffered from severe impairments of schizophrenia, depression, anxiety, and alcohol abuse.  (R 15).  However, he discounted Dr. Nabours' assessment of Malbrew's functional limitations resulting from the schizophrenia, reasoning as follows:

> Dr. Nabours' assessment is generally consistent with an ability to perform simple, repetitive work.  Dr. Nabours reported that the claimant had no limitations on the abilities to remember locations and work like procedures,

10

> understand and remember simple instructions, and to understand and
> remember detailed instructions.  Moreover, the claimant reported that he
> was not taking any psychoactive medication nor was he receiving any
> mental health treatment.  The claimant did not seek treatment from Dr.
> Nabours.  Instead, he only wanted an insurance form filled out.
> Accordingly, the Administrative Law Judge finds that the claimant is able
> to perform unskilled work.

(R 24).

In his query to the vocational expert, the ALJ posited the following hypothetical

regarding Malbrew's mental functional capacities:

> Mentally he has the ability to get along with others and understand simple
> instructions.  He can concentrate, perform simple tasks, and respond and
> adapt to workplace changes and supervision.

(R 64).

In response to the hypothetical, the vocational expert identified several jobs

Malbrew could perform.  Malbrew's attorney posited a hypothetical to the vocational

expert incorporating the limitations given by Dr. Nabours, and the vocational expert

testified those limitations would eliminate all competitive employment.  (R 65, 66).

The ALJ is required to give controlling weight to a treating physician's opinion if

the ALJ finds that opinion to be well-supported by medically acceptable clinical and

laboratory diagnostic techniques and not inconsistent with the other substantial evidence

in the case record. See 20 C.F.R. § 404.1527(d)(2)(Emphasis added).

It is not clear whether the ALJ accepted Dr. Nabours as a treating source or not, as

the ALJ focused on Malbrew's *lack* of treatment.   However, the regulations, in part,

define a "treating source" as a physician, psychologist, or other accepted medical

11

practitioner with whom the claimant *had* or has an "ongoing treatment relationship." 20 C.F.R. § 404.1502. (Emphasis added).  Dr. Nabours is the only medical source in the record relevant to Malbrew's mental health and there is evidence that he *had* treated Malbrew in the past for paranoid schizophrenia, although those medical records are not in the administrative record.  Moreover, the records show Dr. Nabours was presently trying to treat Malbrew through the use of anti-psychotic medication, although Malbrew would not agree to take it.  Therefore, the undersigned finds Dr. Nabours was Malbrew's treating psychiatrist.

In many cases, a treating physician's opinion is entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.  See SSR 96-2p. A treating physician's opinion, however, may be disregarded when good cause is shown. Paul v. Shalala, 29 F.3d 208, 211 (5th Cir.1994); Leggett v. Chater,  67 F.3d 558, 566 (5th Cir. 1995). If the ALJ does not accord a treating physician's opinion controlling weight, the ALJ must set forth specific reasons for the weight given, supported by the evidence in the case record. See 20 C.F.R. § 404.1527(d)(2).  The ALJ must explain the weighing in the decision, and the weight will stand or fall on the reasons set forth in the opinion. Newton v. Apfel, 209 F.3d 448, 455 (5th Cir. 2000).  "[A]n ALJ is required to consider each of the § 404.1527(d) factors before declining to give any weight to the opinions of the claimant's treating specialist."  Newton, 209 F.3d at 448.  The factors given by the Fifth Circuit which an ALJ must consider to assess the weight to be given to

the opinion of a treating physician when the ALJ determines that it is not entitled to "controlling weight are: (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician." <u>Newton</u>, 209 F.3d at 456-57.

As a treating specialist, Dr. Nabours' opinions regarding the severity of Malbrew's impairment should not have been disregarded by the ALJ without a thorough consideration of the factors of 20 C.F.R. § 404.1527(d), and these factors should be considered on remand.

In addition to failing to expressly consider the § 404.1527(d) factors, the ALJ focused on Malbrew's failure to seek treatment and failure to take medication in discounting Dr. Nabour's opinions regarding the severity of Malbrew's schizophrenia. Thus, the court infers that the ALJ based his finding of no disability on Malbrew's lack of compliance with Dr. Nabours' recommended treatment by medication.

The Court recognizes that "an impairment [that] reasonably can be remedied or controlled by medication or therapy ... cannot serve as a basis for a finding of disability." <u>Johnson v. Bowen</u>, 864 F.2d 340, 348 (5th Cir.1988)(citing §§ 404.1530 ("In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work.").  Moreover, "[i]f a claimant fails to follow prescribed

treatment without good reason, the claimant will not be entitled to disability." <u>Halterman</u>

<u>v. Astrue</u>, 2009 WL 463889 at *6 (W.D.La. 2009)(unpublished); 20 C.F.R. § 404.1530.

However, the Commissioner may not deny benefits for failure to comply with

prescribed treatment unless the claimant is first provided with notice.  As noted by the

Court in <u>Halterman</u>:

> Social Security Ruling 82-59 provides that "before [such] a determination
> is made, the individual ... will be informed of this fact and of its effect on
> eligibility for benefits." SSR No. 82-59 (1982) (emphasis added). Second,
> the claimant "will be afforded an opportunity to undergo the prescribed
> treatment or to show justifiable cause for failing to do so." <u>Id</u>. (emphasis
> added); see also 20 C.F.R. § 416.930 ("If you do not follow the prescribed
> treatment without a good reason, we will not find you disabled ...")
> (emphasis added).

Nothing in the record indicates that Malbrew received the notice mandated in

Social Security Ruling 82-59.  Neither is there any indication that the ALJ attempted to

determine whether Malbrew "[was] justifiably failing to undergo the treatment

prescribed." [4]   Several other courts have recognized in unreported decisions that mentally

ill individuals frequently fail to take their prescribed medications, and that

"noncompliance with psychiatric medications could be the 'result of the mental

impairment and, therefore, [the noncompliance is] neither willful nor without a justifiable

excuse.'"  <u>Alexander v. Astrue</u>, 2008 WL 918527 (W.D.La. 2008), citing <u>Grossweiler v.</u>

---

[4]See <u>Alexander</u>, 2008 WL 918527 (W.D.La. 2008), citing unreported decisions <u>Alcorta v.</u>
<u>Barnhart</u>, 2006 WL 3827003, at *11 (W.D. Tex. 2006); <u>Pimenta v. Barnhart</u>, 2006 WL 2356145,
at *6 (S.D.N.Y. 2006) ("To the extent that the ALJ relied on [claimant's] refusal to have surgery
without determining whether his refusal was justifiable, the decision was in error.").

<u>Barnhart</u>, 2003 WL 22454928, at *2 (W.D.Tex. Sept. 30, 2003).

Consequently, the undersigned finds the ALJ's reliance upon Malbrew's failure to seek treatment and take medications to disregard Dr. Nabours' uncontroverted opinions regarding Malbrew's mental functional capacities was error.  As a result, the disability analysis was flawed at both the third step, the consideration of whether Malbrew's mental impairments were of listing level severity, and in the assessment of Malbrew's residual functional capacity, which resulted in a finding of "not disabled" that was not supported by substantial evidence.

### *Conclusion and Recommendation*

For the reasons given above, the undersigned finds the ALJ committed legal error by failing to consider the factors of 20 C.F.R. § 404.1527(d) and failing to follow the requirements of Social Security Ruling 82-59.   As a result, the ALJ's determinations at the third step of the analysis, the assessment of claimant's residual functional capacity, and the ALJ's ultimate finding of "not disabled" were not supported by substantial evidence.  Therefore,

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be **REVERSED AND REMANDED** to the Commissioner for reconsideration of Dr. Nabours' opinions in light of  20 C.F.R. § 404.1527(d) and for reevaluation of Malbrew's compliance in accordance with Social Security Ruling 82-59.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties

15

aggrieved by this recommendation have fourteen (14) days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir.  1996).**

Signed in Lafayette, Louisiana, this 21st day of January, 2011.

Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)

16